No. 24,879.

THE STATE OF KANSAS, *Appellee,* v. TOM P. SHANAHAN, *Appellant.*

SYLLABUS BY THE COURT.

1. LARCENY—*Automobile—Witness—Cross-examination on Collateral Issues.* Where a party takes the stand as a witness his adversary has the right, on cross-examination, for the purpose of affecting his credibility, to inquire touching his past life and conduct, the limits of such inquiry being ordinarily within the discretion of the trial court.

2. SAME—*Cross-examination of Witness Proper.* The record examined and held that there was no undue latitude allowed the county attorney or abuse of discretion by the court in the cross-examination of the defendant.

3. SAME—*Evidence Sufficient to Sustain Conviction.* The evidence tending to establish the guilt of a defendant charged with the theft of an automobile examined and held sufficient to sustain a verdict of conviction.

4. SAME—*Instructions.* The instructions examined and found to have fairly presented all the material questions to the jury.

Appeal from Marion district court; CASSIUS M. CLARK, judge. Opinion filed July 7, 1923. Affirmed.

*J. W. Ward,* and *L. R. Fulton,* both of Wichita, for the appellant.

*C. B. Griffith,* attorney-general, *John F. Rhoades,* assistant attorney-general, and *Braden C. Johnston,* county attorney, for the appellee.

The opinion of the court was delivered by

HOPKINS, J.: The defendant appeals from a conviction of grand larceny of a Ford automobile, stolen from the streets of Florence, in Marion county, on the evening of January 11, 1923. Six days after the theft, defendant was arrested in Wichita, Kan., in possession of the car. At that time the motor number of 6,663,263 had been filed from its block and the number 6,841,547 had been stenciled in its place; a green sun visor had been placed on the car; the regular steering wheel had been removed, and a special steering wheel installed in its place; also, a meter had been placed on the car. There was evidence that the defendant had purchased, at Okarche, Okla., on January 3, 1923, a Ford coupé of the same model as the stolen car. The motor number of defendant's Oklahoma car was 6,841,-547. Neither at the time of the defendant's arrest, nor afterwards, did he offer any explanation of his possession of the stolen car, except to say that he had used the Oklahoma car two or three times while

The State v. Shanahan.

in Wichita; that he knew nothing of any change of numbers or of equipment, and that he supposed it was his own car.

1. Complaint is made of misconduct of the county attorney in asking prejudicial questions of the defendant on cross-examination. It is well settled that when a party takes the stand as a witness his adversary has a right, on cross-examination, for the purpose of affecting his credibility, to inquire touching his past life and conduct, the limits of such inquiry being ordinarily within the discretion of the trial court. (*The State v. Abbott*, 65 Kan. 139, 69 Pac. 160; *The State v. Pugh*, 75 Kan. 792, 90 Pac. 242; *Ramsey v. Partridge*, 86 Kan. 398, 121 Pac. 343; *Cockrill v. Railway Co.*, 90 Kan. 650, 136 Pac. 322; *The State v. Moberly*, 90 Kan. 837, 136 Pac. 324; *The State v. Killion*, 95 Kan. 371, 148 Pac. 643; *Zinn v. Updegraff*, 113 Kan. 25, 213 Pac. 816; *The State v. Smith*, ante, p. 186.)

In *The State v. Abbott*, supra, it was said:

"There is no better method of sifting the conscience and testing the veracity and credibility of a witness than by cross-examination, and there is abundant authority holding that for the purpose of impairing the credibility of the witness he may be cross-examined as to specific acts tending to discredit him, although such acts are irrelevant and collateral to the main issue." (p. 141.)

We have examined the record and are unable to say that there was any undue latitude allowed the county attorney or any abuse of discretion by the court. Many of the questions asked on cross-examination, to which objection is now made, were not objected to on the trial of the case. They were perhaps not regarded with so much seriousness by the defendant at that time. The defendant is precluded from objecting to the testimony for the first time in this court. (*Hill v. Railroad Co.*, 113 Kan. 489, 215 Pac. 310, and cases cited.)

2. The defendant contends that the verdict was against the law and the evidence. He argues, that the automobile was taken from Florence, on the evening of January 11, and found in his possession six days later at Wichita—a distance of about sixty miles. He says practically the only testimony connecting him with the offense was the possession of the car six days after it was stolen; that there was no attempt to show that he had been in Marion county, on the date in question, nor that he had been absent from his home at the time of the larceny.

In the case of *The State v. Bell*, 109 Kan. 767, it was said:

"It is argued that there is no evidence that Bell stole the car or that he was

aware of its theft for some days after it was stolen. Bell's guilt was proved in the common and usual way that the guilt of most thieves is established—by showing the fact of the theft of the car and showing it to have been in his possession shortly after it was stolen, with no satisfactory explanation of such possession forthcoming from Bell consistent with innocence on his part. . . . When the state has established a complete prima facie case against him, the defendant is under the necessity of combating that prima facie case or of incurring the risk of conviction. He can take his choice. If this be properly characterized as a shifting of the burden of proof, it arises from the stern necessities of defendant's predicament and not because of any arbitrary rule of law imposed on him. In *The State v. Cassady,* 12 Kan. 550, it was said: 'The possession of stolen property, recently after it was stolen, is *prima facie* evidence of guilt, and throws upon the possessor the burden of explaining such possession, and if unexplained *may be* sufficient of itself to warrant a conviction.' (Syl. ¶ 5; see, also, *The State v. McKinney,* 76 Kan. 419, 91 Pac. 1068; *The State v. White,* 76 Kan. 654, 664, 92 Pac. 829; *The State v. Jewell,* 88 Kan. 130, 127 Pac. 608; *The State v. Rice,* 93 Kan. 589, 144 Pac. 1016; 4 Wigmore on Evidence, §§ 2485-2513.)" (p. 769, 771.)

There was no witness who saw the defendant in Marion on the day of the theft, nor testimony that the defendant was outside of the city of Wichita. But, it is argued that in cases of this kind such testimony is not procurable. The modern automobile thief does not approach the scene of his depredations with an announcement of what he proposes to do, but on the contrary, he slips quietly into a strange town, waits in the darkness, and the moment his victim's car is left unguarded he takes his place at the wheel, touches the button and escapes with the fruits of his crime.

In *The State v. Cassady,* supra, it was said:

"The court instructed the jury that 'the possession of stolen goods recently after they are stolen is a strong presumption of guilt.' That the rule that possession of property recently stolen makes out a *prima facie* case of guilt, and throws upon the defendant the burden of explaining that possession, is one of long standing, and abundantly fortified ·by authorities, no one can question. (1 Greenl. Ev., and other citations.) Such possession is said to raise a presumption of guilt, and, if unexplained, is sufficient to warrant a conviction. Some attempts have been made to qualify or limit this rule. . . . still, the overwhelming weight of authority is with the rule as stated; and, as fairly and reasonably interpreted, we think it ought to stand. It does not assume that there is any certain time possession within which is recent possession, and therefore proof of guilt. It is not the statement of an absolute and conclusive legal presumption. It is a presumption which is strong or weak according to the nature of the property stolen, the time and place of the larceny, the time within which the possession is shown, the manner of holding, and the various other conditions which, appearing in any case, give occasion for the application of the rule; for it must be remembered that a jury never

The State v. Shanahan.

passes upon this as an abstract question, isolated from the facts and persons. A larceny must always be proved before there can be any presumption as to who is the thief. Now, when a larceny is proved, the possession may be shown so recently, so almost instantaneously, thereafter, as to render it morally certain that the possessor was a thief. To declare otherwise would be to ignore all those facts of human experience and conditions of human action which support the rules of evidence. To instruct a jury that such a recent possession was insufficient to call upon the defendant for explanation, and, unexplained, to warrant a conviction, would insult the intelligence of every juror. As the time between the larceny and the possession is enlarged, the necessity of additional evidence appears, and in some cases the fact of possession may be but a slight circumstance indicative of guilt." (pages 559 and 560.) The rule of law there stated has been followed repeatedly by this court. (*The State v. Stewart,* 24 Kan. 250; *The State v. Henry,* 24 Kan. 457; *The State v. Deuel,* 63 Kan. 811; *The State v. Bell,* supra; *The State v. Schaefer,* 111 Kan. 153.)

The defendant took the stand in his own defense. Apparent discrepancies in his testimony may have caused the jury to utterly disbelieve the material parts of his story. When arrested he told the sheriff and county attorney that he did not know his wife's maiden name when he married her. He later told them that he did know her maiden name and that when he made his previous statement to the officers he did not mean it. The officers asked him if he knew anyone in Marion county prior to his arrest and he answered no, but afterwards stated he did know a man in Marion county and knew where he lived. He told the officers that at the time he purchased a car in Okarche, Okla. (the motor number of which was stamped on the stolen car found in his possession), he went to Okarche from El Reno, and went on the train, when, as a matter of fact, he drove from Wichita direct to Okarche. He testified that, in answer to questions by the officers, he had told them anything that had popped into his head. The jury saw the witnesses and heard the testimony. To them the defendant offered no satisfactory explanation of his possession of the stolen car. The record discloses no substantial reason why the verdict of the jury should be set aside.

3. Complaint is made of some of the instructions. We have examined them and find no substantial merit in the contentions of defendant. The instructions fairly presented all of the material questions to the jury. We find no reversible error. The judgment is affirmed.